## FOURCHY v. ELLIS.

### (Circuit Court, D. Vermont. August 23, 1905.)

1. EQUITY JURISDICTION—AGREEMENT FOR SALE OF INTEREST IN BUSINESS—ENFORCEMENT OF RIGHTS UNDER.

   Equity has jurisdiction of a suit to enforce rights of the complainant who paid sums of money to defendant for use in his business under an alleged agreement that complainant was to have an interest in such business and its profits, which agreement was never definitely completed.

2. CONTRACTS—UNSIGNED WRITING.

   A draft of a contract, prepared and assented to by the parties as it was made, but never signed as contemplated, is not valid as a parol contract, since it was not intended to be operative until signed.

   [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 171.]

3. SAME—AGREEMENT FOR SALE OF INTEREST IN BUSINESS—CONSTRUCTION.

   Complainant advanced money to defendant for use in his business, under an agreement that it should apply toward the purchase of an interest in defendant's property and business, to be carried out by the organization of a corporation and the issuance of stock to complainant, subject to certain contingencies, in which case the money was to be repaid. The property was never conveyed to the corporation, which was subsequently abandoned. *Held*, that the agreement did not operate to transfer an interest in the property, nor was it sufficient to create a partnership; but that, under the contingent proviso, complainant was entitled to recover the money, with interest.

In Equity.

Robert J. Mahon, for plaintiff.

Frank Plumley, William E. Church, and Roger Sherman, for defendant.

WHEELER, District Judge. The plaintiff is skilled in the contracting for large granite buildings; and the defendant had granite works at Northfield, and quarries at Bethel, Vt., with small capital for the business. The plaintiff became interested in the quality of the granite, and they agreed that he should become interested in the business to the extent of about one-fifth, for which he was to pay $5,000. A corporation was organized with a capital stock of

$500,000, representing the defendant's property in the works and quarries; and certificates of stock were issued to the defendant, of which one, of 900 shares, of $100 each, was assigned in blank and delivered to the plaintiff, and they executed this contract:

"Agreement made September 23d, 1902, between Richard Fourchy, of New York City, and Edwin B. Ellis, of Northfield, Vermont, by which said Ellis agrees to and does sell to said Fourchy nine hundred shares of the capital stock of the United Granite Construction Company, fully paid, for the sum of five thousand dollars, which said Fourchy agrees to pay to said Ellis upon the sale of five hundred shares of the treasury stock hereinafter referred to.

"If five hundred shares of the so-called treasury stock of said company (to wit, stock sold for the increase of working cash capital of said company) is not sold within twelve months from date, or if it shall be determined by the board of directors not to sell said treasury stock then this agreement shall be canceled, and said Fourchy shall not be required to pay said sum as aforesaid; and if he shall have paid any money on account of said sum it shall be returned to said Fourchy at the expiration of said twelve months, or when the board of directors shall decide not to sell said treasury stock, and said Fourchy shall have a lien on said stock for such return of said moneys.

"Until .said Fourchy has fully paid for said stock as aforesaid the said Ellis shall have a lien for the purchase money on all of said stock so sold to said Fourchy, and may deliver said stock in escrow for the purpose hereof, if he so desires. The said Fourchy agrees not to sell the said stock so purchased, unless with the written consent of said Ellis; and said Ellis agrees to always retain one thousand shares (excluding so-called treasury stock), and not part with said block or any part of it unless with the written consent of said Fourchy.

"This agreement shall bind the heirs, legal representatives, and assigns of the parties hereto.

"[Signed]                                         Edwin B. Ellis.
                                              "Richard Fourchy."

The business was continued by the defendant, and the plaintiff furnished him with $2,000 on October 11th, and $1,300 on October 18th, with which to meet his pay rolls, for which he took the defendant's notes as evidence of the money, but which was understood to be reckoned in adjustment of the payment of the plaintiff's share in the business, when that should be reached. The defendant did not convey his works or quarries to the corporation, no treasury stock was sold, and the corporation failed.

The plaintiff continued to aid the defendant in the business by assisting about estimates for obtaining contracts, and on May 12, 1903, they adjusted what was due to the plaintiff from the business to that time at $700, leaving the plaintiff's $3,300 evidenced by the notes in the business as before. A new corporation was formed by the name of E. B. Ellis Granite Company, of which the works and quarries of the defendant constituted the capital stock of $400,000, in shares of $100 each, one half of which, less one share, was owned by the defendant, and the other half, less another share, was held by another party, under an agreement that neither should sell without the other's consent.

The plaintiff met the defendant, at his instance, on April 4, 1904, in New York, and they conferred about the plaintiff's interest in the business and property, and went to an attorney, and had him take memoranda for a contract in respect to it, which he put in form and presented to them that evening for completion, and which they

went over and made suggestions about, respectively, and assented to, till it read thus:

"Agreement made this 4th day of April, 1904, between Richard Fourchy, of New York City, and Edwin B. Ellis, of Northfield, Vermont, witnesseth:

"First. That said Ellis hereby agrees to sell and deliver to said Fourchy five hundred full-paid shares of the capital stock of the E. B. Ellis Granite Co., of Vermont (the whole capital stock being 4,000 shares and there being no preferred stock and no bonds issued or authorized), for which said 500 shares said Fourchy pays three thousand dollars to said Ellis who hereby acknowledges the receipt thereof.

"Second. That said Fourchy hereby agrees to make the following additional payments to said Ellis on the following conditions: (a) When said stock sold said Fourchy has, in the first fiscal year of said corporation, earned, and said Fourchy has received as dividends thereon $6,000, then said Fourchy shall pay all excess of the dividends earned by his said stock over said $6,000 to said Ellis immediately upon the receipt of said excess. (b) When said stock sold to said Fourchy has earned, and he has received as dividends on it, the foregoing sum of $6,000, and in the second fiscal year said stock has earned, and said Fourchy has received in dividends on it for said second fiscal year, the sum of three thousand dollars, then said Fourchy shall pay to said Ellis immediately upon the receipt thereof all excess over said $3,000. (c) Upon the ending of every succeeding fiscal year said Fourchy shal pay to said Ellis all excess in each succeeding year over three thousand earned by his (Fourchy's) said block of stock and paid to him as dividends thereon; but, when such conditional payments and said payment of three thousand dollars shall make a total of twenty-five thousand dollars ($25,000), then all further payments to said Ellis shall cease. (d) To provide for the contingency that said corporation shall not earn, declare, and pay the dividends in the periods hereinbefore set forth, it is agreed by the parties hereto that said conditional payments out of said excess of dividends to be paid on said stock shall be paid in the manner following and subject to these conditions: That no conditional payment shall be made until at least $9,000 shall be first received in dividends by said Fourchy, except that this clause shall not control the clauses designated (a) and (b) herein; that after said $9,000 shall have been paid on said Fourchy stock, the conditional payments of excess over said $9,000 shall begin and shall follow in the plan analogous to the clauses herein (a) and (b). This illustration is intended to convey the meaning of the parties hereto: If the corporation does not pay dividends on this Fourchy stock exceeding $9,000 in three years, and then later pays sufficient dividends to $9,000, and the excess thereover will pay said Ellis all his conditional payments, he shall be entitled to such excess sufficient to make said total of $25,000 as stated in clause (c) herein.

"Third. The said Ellis hereby agrees to endeavor to deliver to said Fourchy within thirty days a contract by said corporation employing said Fourchy as general superintendent of construction on all contracts said corporation has or may have on the new Union Railway Station in Washington, D. C. The said contract to run until the completion of all said corporation's contracts on said buildings and the annual salary to said Fourchy to be $4,000, payable in monthly installments at the end of each month; said Ellis to pay the additional sum of three hundred dollars on said Fourchy's departure for Washington. And said Ellis hereby guaranties the performance and completion of said contract of employment (if made) on the part of said corporation.

"In witness whereof, we have hereunto set our hands and seals, this 4th day of April, 1904."

The defendant gave the plaintiff and the attorney to understand that he agreed to the arrangement so far, but hesitated about signing it, and suggested that some arrangement be made whereby he could vote the stock to be conveyed to the plaintiff; and this addition was drawn by the attorney:

"Said Fourchy agrees that he will not sell or dispose of any of his said block of stock without first allowing said Ellis to exercise his option to first

buy, hereby given, to buy said stock or any part of it at any bona fide price offered said Fourchy, but not less than $25,000.00. This agreement will bind the heirs, assigns, representatives, and successors of said Fourchy. Said Fourchy hereby gives the voting right on all his stock to said Ellis for the term of five years from date, and will, on demand, execute all instruments and deposits to carry out said right conformable to the laws of Vermont."

Then question arose whether this would be lawful in Vermont, and the defendant took the papers and said he would go home to Vermont, ascertain about that, and return with them in a few days for execution. He did not return with the papers, finally refused to execute them, and this bill is brought to enforce the plaintiff's rights as against the defendant, arising from these transactions. The answer contains a demurrer, which is insisted upon in argument; but the bill seems to set forth equitable rights which entitle the plaintiff to relief, if he maintains them by proof. He claims that he was to have a fifth interest in the property, and profits from the time he put his money in; and he testifies that the defendant said, when he was declining to convey the property to the United Granite Construction Company, that the plaintiff's "share in the business would continue on the basis of one-fifth interest in the properties and the business," until a new company should be organized, or that interest delivered in stock. Such oral agreement would not convey any title or interest in the property because of the statute of frauds, and there was no such assumption of losses with profits as to constitute a partnership, or give the plaintiff any rights as a partner. His rights appear to have rested upon the provision of the written agreement of September 23, 1902, that, "if he shall have paid any money on account of said sum, it shall be paid to said Fourchy at the expiration of said twelve months," or when the directors should decide not to sell the treasury stock. Whether the $700 paid May 12, 1903, was for a share of profits or for services, it would not, of itself, constitute a partnership or joint interest, but be only evidence that would not be conclusive of either; and the settlement and payment would end the claim of profits to that time either way.

The draft of agreement of April 4, 1904, is relied upon as a completed parol contract so far as it was concurred in, and at first made ready for signature. It was not, however, agreed to as such a contract, to be operative then, but only as a preparation of a contract, to be in force when executed, and that was never done. The defendant declined signing it then for reasons satisfactory to himself, and that left it open. He intimates in his testimony that he feared being imposed upon about it, but nothing of that kind is shown. He appears to have been capable of taking care of himself, to have been treated fairly, and to have acted as he chose. The contract seems to fail for want of consummation. If it could be found to be established by parol evidence in connection with the writing, it would probably fail as a sale of the stock of the new corporation in view of the statute of frauds. The $3,000, which would be a part or all of the purchase price, was already in the defendant's hands as a part of the $3,300 which he had held all the while; but it was not

then agreed to be applied in payment, nor altered in relations on account of the proposed new arrangement. Its situation was unchanged, and it does not appear to have become a payment on any new contract.

The $3,300 remains in the defendant's hands, evidenced by the notes, and probably an action at law after demand and refusal would lie to recover it. But no demand has been made, and according to all the evidence it was in the defendant's hands to be reckoned in connection with the acquisition by the plaintiff of some share in property and business, which, having failed, leaves it there to be accounted for in closing the transaction, and this, apparently, may well be done in equity; otherwise, the jurisdiction to decree it might fail. It has had its earnings or interest to May 12, 1903, and under the circumstances would seem to carry interest as an accretion since.

Decree for plaintiff for $3,300, with interest from May 12, 1903, and costs.